CHEYENNE SALEENA STARK, A MINOR, CODY BRANDON STARK, A MINOR, BY THEIR GUARDIAN AD LITEM, NICOLE JACOBSEN, PLAINTIFFS-APPELLANTS V. FORD MOTOR COMPANY, A DELAWARE CORPORATION, DEFENDANT-APPELLEE

No. COA09-286

(Filed 18 May 2010)

**1. Products Liability— defense—alteration or misuse— seven-year-old child**

The products liability defense of alteration or modification was not applicable to a child under seven years of age injured by a seat belt because children that age are not capable of negligence. Defendant was unable as a matter of law to prove the requisite element of foreseeability inherent in the proximate cause portion of its N.C.G.S. § 99B-3 defense.

**2. Products Liability— defense—alteration or misuse—party to action**

The trial court erred in a products liability action by denying plaintiffs' motion for a directed verdict on the defense of alteration or misuse where a father who was not a party to the action was alleged to have placed the seatbelt behind the child's back. The plain language of N.C.G.S. § 99B-3 states that the entity responsible for the modification or misuse of the product must be a party to the action in order for the defense to apply.

### 3. Costs— denial of directed verdict reversed—award of costs reversed

An award of costs in favor of defendant was reversed where the trial court's denial of plaintiff's motion for directed verdict on a products liability defense was reversed.

### 4. Products Liability— child injured by seatbelt—evidence sufficient

Plaintiff presented sufficient evidence to survive defendant's motions for summary judgment and directed verdict where a child was injured by her seatbelt in an accident. Plaintiffs offered evidence that tended to show that defendant manufactured a product which had the potential to cause the injury and that defendant did not use alternative designs that were available and used by defendant in similar products.

Judge WYNN concurring in the result.

Appeal by Plaintiffs from judgment entered 15 May 2007 and orders entered 28 April 2008 by Judge Forrest D. Bridges in Superior Court, Mecklenburg County. Heard in the Court of Appeals 3 November 2009.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson; and Gilbert, Ollanik & Komyatte, P.C., by James L. Gilbert, for Plaintiffs-Appellants.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Kirk G. Warner and Christopher R. Kiger; and Bowman and Brooke LLP, by Robert L. Wise and Sandra Giannone Ezell, for Defendant-Appellee.*

McGEE, Judge.

Cheyenne Saleena Stark (Cheyenne), Cody Brandon Stark (Cody), and Cory Christian Stark (Cory), through their then Guardian ad Litem, Ruby Squires Stark; and Gordon Walter Stark, Jr. (Gordon Stark), filed a complaint on 23 April 2004 against Ford Motor Company (Defendant) alleging, *inter alia*, that Cheyenne suffered a spinal cord injury caused by a defective design of the seatbelt she was using during an accident involving her parents' 1998 Ford Taurus (the Taurus) on 23 April 2003. The complaint further alleged that Cody suffered "severe abdominal injuries, including damage to his spleen." The claims of Gordon Stark and Cory were later dismissed, as discussed below.

STARK v. FORD MOTOR CO.

[204 N.C. App. 1 (2010)]

Cheyenne and Cody were passengers in the back seat of the Taurus on 23 April 2003. At the time of the accident, Cheyenne was five years old and Cody was nine years old. Each was secured in the Taurus by a three-point seatbelt designed by Defendant. Neither Cheyenne nor Cody was sitting in a booster seat. Their three-year-old sibling, Cory, was sitting in the middle of the back seat.

Cheyenne's mother, Tonya Stark, was driving the Taurus. Cheyenne's father, Gordon Stark, was a passenger in the front seat. Tonya Stark was operating the Taurus in a parking lot at a speed of twenty-six miles per hour, when the vehicle suddenly accelerated. She lost control of the Taurus, and it collided with a light pole.

Following the collision, Cheyenne was dazed but able to walk. However, after Cheyenne was taken to the hospital a short time later, she complained of leg pain. Cheyenne later lost all feeling in her body below her rib cage.

The complaint alleged that Defendant engaged in "[w]illful, [w]anton and [r]eckless [m]isconduct" in designing the seatbelts in the Taurus and that Defendant's actions caused physical and cognitive injuries to Cheyenne and Cody. The complaint also alleged that the engine in the Taurus was defectively designed in that it caused a "sudden unintended acceleration" which led to the collision. Defendant filed an answer generally denying negligence and defective design and asserting that Tonya Stark and Gordon Stark were the cause of any injuries. Defendant also alleged, *inter alia*, the affirmative defenses of unauthorized modification or alteration of the Taurus or its components and failure to follow instructions or warnings given by Defendant.

Defendant filed a motion for summary judgment on 17 February 2005. The trial court filed an order on 22 August 2005 granting Defendant's motion as to: (1) the claim for cognitive injury to Cheyenne, and (2) the claim based on the sudden unintended acceleration of the Taurus. In its order, the trial court also dismissed personal injury claims asserted by Gordon Stark and Cory. The trial court denied Defendant's motion for summary judgment as to the remainder of claims, finding that there remained genuine issues of material fact.

Nicole Jacobsen, (Guardian ad Litem), filed a motion on 15 March 2005 seeking to be substituted as Guardian ad Litem in the action. The record is unclear as to when this motion was granted; however, at the time of trial, plaintiffs in the action were as follows: Cheyenne

STARK v. FORD MOTOR CO.

[204 N.C. App. 1 (2010)]

Saleena Stark and Cody Brandon Stark, by their Guardian ad Litem, Nicole Jacobsen (Plaintiffs).

At trial, Plaintiffs presented expert testimony that the injuries Cheyenne suffered were caused or enhanced by a design defect known as "film spool" in the seatbelt she was using. This defect allowed slack in the seatbelt to cause the shoulder portion of the belt to slip off Cheyenne's shoulder and come to rest in a position lower on her body, such that she bent over the seatbelt during the accident. It was this "film spool" and the resulting movement by Cheyenne that Plaintiffs asserted as the cause of Cheyenne's injuries. Plaintiffs further presented evidence that the use of certain devices may prevent "film spool" from occurring during accidents by retracting or otherwise restricting any excess belt material during a collision. The Taurus was not equipped with any of these devices.

At the close of Plaintiffs' evidence, Defendant moved for a directed verdict on the grounds that Plaintiffs failed to present evidence of "testing to show that any of their alleged alternative designs would have made the Taurus any safer in this crash." Defendant renewed its directed verdict motion at the close of all the evidence. The trial court denied both of Defendant's motions.

Defendant presented evidence at trial that Cheyenne's injuries were caused by her improper use of the seatbelt. Specifically, Defendant asserted that Cheyenne was wearing the seatbelt with the shoulder portion behind her back. Defendant argued that, because Cheyenne was not restrained by the shoulder portion of the belt, the "film spool" effect could not have been the cause of her injuries. Because "film spool" was not a cause, the use of the preventative devices offered by Plaintiffs would have made no difference as to Cheyenne's injuries. Instead, Defendant presented three theories of causation for Cheyenne's injuries: (1) the accident itself; (2) Cheyenne's improper use of the seatbelt by wearing the shoulder belt behind her back; and (3) Cheyenne's non-use of a booster seat, contrary to Defendant's instructions.

Plaintiffs filed a motion for a directed verdict as to two of Defendant's affirmative defenses. In their motion, Plaintiffs specifically requested a directed verdict as to Defendant's affirmative defenses of "Alteration or Modification of Product" pursuant to N.C. Gen. Stat. § 99B-3, and "Adequate Warnings or Instruction" pursuant to N.C. Gen. Stat. § 99B-4. With respect to their requested directed verdict based on N.C.G.S. § 99B-3, Plaintiffs argued that,

**STARK v. FORD MOTOR CO.**

[204 N.C. App. 1 (2010)]

because Tonya Stark and Gordon Stark were not parties to the action, and because Cheyenne was a minor under the age of seven years and was therefore legally incapable of negligence, N.C.G.S. § 99B-3 did not provide an affirmative defense to Defendant. After hearing arguments from Plaintiffs and Defendant, the trial court denied Plaintiffs' motion.

The trial court submitted questions to the jury. The jury answered those questions, in pertinent part, as follows:

4. Did the Defendant Ford Motor Company act unreasonably in designing the 1998 Ford Taurus and its component parts, proximately causing enhanced injury to Cheyenne Stark?

Answer: [Yes]

[If you answer "Yes" to this issue, then go to Issue 5; if you answer "no" to this issue, then do not consider any further issues.]

5. Were the enhanced injuries to Cheyenne Stark caused by using the 1998 Ford Taurus in a manner contrary to any express and adequate instructions or warnings which were known or should have been known by the user?

Answer: [No]

[If you answer "Yes" to this issue, then do not consider any further issues; if you answer "no" to this issue, go to Issue 6.]

6. Were the enhanced injuries to Cheyenne Stark caused by an alteration or modification of the 1998 Ford Taurus?

Answer: [Yes]

[If you answer "yes' [sic] to this issue, then do not consider any further issue; if you answer "no" to this issue, then go to Issue 7.]

The jury further determined that Defendant's product, the Taurus, was not the proximate cause of enhanced injury to Cody. The trial court entered judgment in favor of Defendant on 15 May 2007, ordering that Plaintiffs recover nothing from Defendant, dismissing Plaintiffs' complaint, and awarding costs to Defendant. The trial court retained jurisdiction for the purposes of determining costs and expert witness fees.

Plaintiffs filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial on 24 May 2007. The trial court filed an order denying Plaintiffs' motion on 23 April 2008.

Defendant filed a motion for costs in the amount of $135,634.74 on 8 August 2007 on the grounds of "its successful defense and jury verdict". In an order entered 28 April 2008, the trial court granted Defendant's motion in part but reduced the award to $45,717.92. The trial court stated that "after consideration of the motion, affidavits, materials submitted by the parties, arguments of counsel, and other matters of record, that [Defendant] was the prevailing party at trial and that certain costs should, in the [c]ourt's discretion, be awarded to [Defendant]." The trial court awarded these costs "against Plaintiffs and Nicole Jacobsen as Guardian ad Litem, jointly and severally[.]"

Plaintiffs appeal from the trial court's judgment entered 15 May 2007, the trial court's order denying Plaintiffs' motion for judgment notwithstanding the verdict or a new trial, and the trial court's order granting Defendant's motion for award of costs. Defendant cross-assigns error and argues that the trial court erred in denying Defendant's motions for summary judgment and directed verdict as to Plaintiffs' inadequate design claims.

*Directed Verdict*

[1] Plaintiffs first argue that the trial court erred by denying their motion for a directed verdict on the issue of product alteration. Because Cheyenne was five years old at the time of the collision, Plaintiffs contend she was legally incapable of modifying or altering the product under N.C. Gen. Stat. § 99B-3. Because neither Tonya Stark nor Gordon Stark was a party to this action, Plaintiffs contend that no misuse or modification on their part would provide a defense under N.C.G.S. § 99B-3. Plaintiffs argue, therefore, that the trial court should have granted a directed verdict as to Defendant's § N.C.G.S. 99B-3 defense as described in jury question number 6, to wit: whether "the enhanced injuries to Cheyenne Stark [were] caused by an alteration or modification of the 1998 Ford Taurus[.]" We agree.

Our Court reviews a trial court's ruling on a motion for directed verdict *de novo. Denson v. Richmond County*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003).

> The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, the question is whether

there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury. Where the motion for judgment notwithstanding the verdict is a motion that judgment be entered in accordance with the movant's earlier motion for directed verdict, this Court has required the use of the same standard of sufficiency of evidence in reviewing both motions.

*Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991) (internal citations omitted). Where a trial court errs in submitting an affirmative defense to a jury, our Court has the discretion to remand for a new trial. *Cicogna v. Holder*, 345 N.C. 488, 490, 480 S.E.2d 636, 637 (1997). However, "[i]f the issue which was erroneously submitted did not affect the entire verdict, there should not be a new trial on all issues." *Id.*

N.C. Gen. Stat. §§ 99B-1 *et seq.*, which govern products liability actions in North Carolina, provide a defense to a products liability claim in N.C. Gen. Stat. § 99B-3, as follows:

(a) No manufacturer or seller of a product shall be held liable in any product liability action where a proximate cause of the personal injury, death, or damage to property was either an alteration or modification of the product by a party other than the .manufacturer or seller, which alteration or modification occurred after the product left the control of such manufacturer or such seller unless:

(1) The alteration or modification was in accordance with the instructions or specifications of such manufacturer or such seller; or

(2) The alteration or modification was made with the express consent of such manufacturer or such seller.

(b) For the purposes of this section, alteration or modification includes changes in the design, formula, function, or use of the product from that originally designed, tested, or intended by the manufacturer. It includes failure to observe routine care and maintenance, but does not include ordinary wear and tear.

N.C. Gen. Stat. § 99B-3 (2009).

Our Court has held that a determination of whether an act was a proximate cause of an injury must include an analysis of "foreseeability." *Hastings for Pratt v. Seegars Fence Co.*, 128 N.C. App. 166,

170, 493 S.E.2d 782, 785 (1997). Because the alteration or modification of a product must be a proximate cause of an injury in order to provide a viable defense under N.C.G.S. § 99B-3, we must analyze the issue of foreseeability. *Id.*, 493 S.E.2d at 784.

> Foreseeability of some injurious consequence of one's act is an essential element of proximate cause, though anticipation of the particular consequence is not required. While the usual test is whether "a person of ordinary prudence could have reasonably foreseen . . ." some injurious result from the unintended use of the product; where, as in the present case, the actions of a minor child are at issue, the test of foreseeability is whether a child of similar "age, capacity, discretion, knowledge, and experience" could have foreseen some injurious result from his or her use of the product.

*Id.*, 493 S.E.2d at 785 (internal citations omitted). "As a matter of law, a child under 7 years of age is incapable of negligence." *State v. Harrington*, 260 N.C. 663, 666, 133 S.E.2d 452, 455 (1963). *See also Allen v. Equity & Investors Management Corp.*, 56 N.C. App. 706, 709, 289 S.E.2d 623, 625 (1982) ("An infant under 7 years of age is conclusively presumed to be incapable of contributory negligence.") (citation omitted).

Plaintiffs argue that, because Cheyenne was under seven years of age at the time of the accident, she was incapable of negligence and was therefore unable to "foresee" that any modification or alteration could be a proximate cause of her injury. We agree.

In *Hastings*, our Court held that N.C.G.S. § 99B-3 did not provide a defense to a manufacturer on the following facts. An eight-year-old child was injured while playing on a fence and gate constructed by the defendant. *Hastings*, 128 N.C. App. at 167, 493 S.E.2d at 783. While the minor plaintiff was hanging on the gate, another child caused the gate to roll. *Id.* When the gate rolled, two of the minor plaintiff's fingers were caught in a roller and were amputated. *Id.* The minor plaintiff's mother, as guardian ad litem for the child, filed a negligence action against the gate manufacturer. *Id.* The defendant argued that N.C.G.S. § 99B-3 provided a defense to the plaintiff's claim in that the minor child "used the fence in a manner other than as it was originally designed, tested, or intended by the manufacturer to be used[.]" *Id.* at 169, 493 S.E.2d at 784. The trial court eventually dismissed the plaintiff's claims. *Id.* at 168, 493 S.E.2d at 783.

Our Court held that the defendant's allegation of "the minor plaintiff's contributory negligence 'by engaging in horseplay on the fence and cantilevered gate . . . .' was sufficient to raise the defense provided by G.S. § 99B-3[.]" *Id.* at 169, 493 S.E.2d at 784. We then cited the standard of care applicable to a minor child between the ages of seven and fourteen years and held that "[i]ssues of proximate cause and foreseeability, involving application of standards of conduct, are ordinarily best left for resolution by a jury under appropriate instructions from the court." *Id.* at 170, 493 S.E.2d at 785.

We apply the same principles of negligence to the N.C.G.S. § 99B-3 analysis in the present case. While the minor plaintiff in *Hastings* was eight years old, in the case before us, Cheyenne was five years old and therefore subject to a different standard of care. As discussed above, the appropriate standard of care to apply, when analyzing the negligence of a child under seven years of age, is that such children are, as a matter of law, incapable of negligence. *Harrington*, 260 N.C. at 666, 133 S.E.2d at 455. Therefore, because Cheyenne was a child under seven years of age at the time of the alleged alteration or modification, Defendant is unable, as a matter of law, to prove the requisite element of foreseeability inherent in the proximate cause portion of its N.C.G.S. § 99B-3 defense. Because foreseeability, and therefore proximate cause, is lacking in Defendant's defense as to Cheyenne, N.C.G.S. § 99B-3 is inapplicable to any alteration or modification alleged to have been performed by Cheyenne herself.

### Party Modifier

[2] Plaintiff next addresses Defendant's argument that Gordon Stark or Tonya Stark modified the seatbelt by improperly placing Cheyenne in the seat with the shoulder belt behind her back. Plaintiffs argue that Cheyenne was still entitled to a directed verdict because neither Gordon Stark nor Tonya Stark was "a party" to the action, as required by N.C. Gen. Stat. § 99B-3.

N.C.G.S. § 99B-3 provides in pertinent part that:

No manufacturer or seller of a product shall be held liable in any product liability action where a proximate cause of the personal injury, death, or damage to property was either an alteration or modification of the product by *a party* other than the manufacturer or seller, which alteration or modification occurred after the product left the control of such manufacturer or such seller. . . .

N.C.G.S. § 99B-3 (emphasis added).

Defendant argues that the trial court's judgment, based on the jury's verdict, was supported by evidence that Gordon Stark misused the rear seatbelt by putting Cheyenne in the backseat and buckling her seatbelt with the shoulder belt behind her back. Defending against Plaintiffs' motion for directed verdict, Defendant argued at trial that "[m]ore importantly, what is the specific evidence in this case about who used Cheyenne Stark's belt; Gordon Stark. He put her in that belt on that day. He is the one who affixed her to this vehicle. He's the one who used the product." Plaintiffs argue that N.C.G.S. § 99B-3 is inapplicable to any alleged alterations or modifications performed by either Tonya Stark or Gordon Stark in placing Cheyenne in the seatbelt improperly, because neither Tonya Stark nor Gordon Stark is a party to this action.

At the time of trial, neither Tonya Stark nor Gordon Stark were parties to the action. Gordon Stark, originally a named plaintiff, had his personal injury claims dismissed on 22 August 2006 when the trial court granted Defendant's motion for summary judgment. Defendant filed a motion for leave to file a third-party complaint against Tonya Stark and Gordon Stark as third-party defendants on 21 August 2006. Defendant's motion was granted in an order filed 27 October 2006, with the condition that, "if the third party defendants are unable to obtain counsel who can prepare for and participate in the trial scheduled for October 30, 2006, then . . . the third party action shall be SEVERED from the instant action and tried at a later date." Defendant did not file a third-party complaint naming as third-party defendants Tonya Stark and Gordon Stark until January 2007. At the time of trial, the parties were as follows: Cheyenne and Cody, by their guardian ad litem, Nicole Jacobsen, as plaintiffs, and Ford Motor Company as defendant.

Plaintiffs rely on three cases involving the application of N.G.C.S. § 99B-3, contending that "[i]n all three cases, the 'modifier' was, or may have been, a party-defendant in the suit, and the cases do not address modification by a non-party as a defense." These cases are: *Edmondson v. Macclesfield L-P Gas Co., Inc.*, 182 N.C. App. 381, 642 S.E.2d 265 (2007); *Phillips v. Restaurant Management*, 146 N.C. App. 203, 552 S.E.2d 686 (2001); and *Rich v. Shaw*, 98 N.C. App. 489, 391 S.E.2d 220 (1990). We note that in *Phillips*, the plaintiff named three defendants in their action: a restaurant management company, Taco Bell Corp., and a restaurant employee. *Phillips*, 146 N.C. App. at 207, 552 S.E.2d at 689. The plaintiff sought to pursue a claim under Chapter 99B, and we held that he was precluded from pursuing this

claim by N.C.G.S. § 99B-3 on the grounds that the product, a fast food item, was produced by the management company and Taco Bell and was modified when the defendant-employee spit into it. *Phillips*, 146 N.C. App. at 218-19, 552 S.E.2d at 696. Therefore, the modifier in *Phillips* was a party to the action.

Likewise, in *Edmondson*, the plaintiff filed an action against both the manufacturer of a heater and a company that performed a "negligent repair" on that heater. 182 N.C. App. at 386, 642 S.E.2d at 269. Our Court upheld the trial court's ruling that the manufacturer was protected by the N.C.G.S. § 99B-3 defense on grounds that the heater had been improperly modified for use with liquified petroleum gas after it left the manufacturer's control. *Id.* at 389-90, 642 S.E.2d at 271-72. The opinion is unclear on the issue of whether the modifier was a party to the action, but Plaintiffs filed a motion requesting that we take judicial notice of a portion of the defendant manufacturer's brief filed with our Court in *Edmondson* referring to the modifier as a party. We grant that motion and take judicial notice of the following statement: "the subject heater was sold . . . and left [defendant manufacturer's] possession, but before it was installed at [the plaintiff's] residence, it was modified by [the defendant repair company] so that it could be used with Liquified Petroleum (L-P) Gas instead of Natural Gas." *See Whitmire v. Cooper*, 153 N.C. App. 730, 735, 570 S.E.2d 908, 911 n.4 (2002) ("this [C]ourt may take judicial notice of the public records of other courts within the state judicial system") (citation omitted); *see also State v. Benfield*, 76 N.C. App. 453, 459, 333 S.E.2d 753, 757 n.1 (1985) (our Court taking judicial notice of "the records of this Court"). Therefore, the modifier in *Edmonson* was also a party to the action.

Defendant counters that this Court did not address whether the "modifier" was a party to the action in any of the three cases cited by Plaintiffs, because "the [N.C.G.S. § 99B-3] defense does not require it." We note that in *Rich*, the third case upon which Plaintiffs rely, the opinion is unclear whether the modification was performed by a party or not. *See Rich*, 98 N.C. App. 489, 391 S.E.2d 220. However, the argument concerning the application of the defense in *Rich* did not turn, as here, on the requirement that the modifier be a party. *See Id.*, 98 N.C. App. at 492, 391 S.E.2d at 222-23. This issue appears to have not been previously determined by our Courts. Defendant contends that the defense enumerated under N.C.G.S. § 99B-3 "is concerned only with whether the product was used properly and whether someone 'other than the manufacturer' altered or misused the product."

STARK v. FORD MOTOR CO.

[204 N.C. App. 1 (2010)]

Defendant's argument overlooks the plain language of the statute. The statute does not provide a defense where "someone 'other than the manufacturer' altered or misused the product[,]" as Defendant contends. Rather, N.C.G.S. § 99B-3 provides a defense where "*a party* other than the manufacturer or seller" causes the alteration or modification. N.C.G.S. § 99B-3 (emphasis added).

To the extent that Defendant contends the use of the term "party" in N.C.G.S. § 99B-3 is unclear, we note that in N.C. Gen. Stat. § 99B-1, which provides the definitions for terms used in Chapter 99B, the terms "Claimant[,]" "Manufacturer[,]" and "Seller" are defined using the phrases "a person or other entity[,]" "a person or entity[,]" and "any individual or entity[,]" respectively. N.C. Gen. Stat. § 99B-1 (2009). Had the General Assembly intended N.C.G.S. § 99B-3 to apply to any person, individual or entity, it would have used such terms. *See Fabrikant v. Currituck County*, 174 N.C. App. 30, 42-43, 621 S.E.2d 19, 28 (2005) (citing *Russello v. United States*, 464 U.S. 16, 23, 78 L. Ed. 2d 17, 24 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.")). Instead, in the statute before us, the General Assembly used the term "party," which has independent legal significance. We note that "party" is defined as "[o]ne who takes part in a transaction . . . . [or] [o]ne by or against whom a lawsuit is brought[.]" Black's Law Dictionary 1231-32 (9th ed. 2009). Therefore, the plain language of N.C.G.S. § 99B-3 states that the entity responsible for the modification or alteration of the product must be a party to the action in order for the defense to apply. Because Defendant asserts that the modification was performed by Gordon Stark, who is not a party to the action in this case, Defendant is unable to establish an N.C.G.S. § 99B-3 defense as to such an alleged modification.

As discussed above, a directed verdict is proper when the evidence, viewed in the light most favorable to the non-moving party, is insufficient, as a matter of law, to submit the question to the jury. *Davis*, 330 N.C. at 322-23, 411 S.E.2d at 138. Because Defendant is unable, as a matter of law, to support an N.C.G.S. § 99B-3 defense as to either Cheyenne, Tonya Stark, or Gordon Stark, Plaintiffs are entitled to a directed verdict as to Defendant's N.C.G.S. § 99B-3 defense. We therefore reverse the trial court's order denying Plaintiffs' motion for directed verdict as to Defendant's N.C.G.S. § 99B-3 defense.

In light of our holding, we need not address Plaintiffs' arguments concerning judgment notwithstanding the verdict, entry of judgment,

or motion for a new trial. Because the jury found that Defendant "act[ed] unreasonably in designing the 1998 Ford Taurus and its component parts, proximately causing enhanced injury to Cheyenne Stark," we reverse the trial court's judgment and remand for entry of judgment in favor of Cheyenne Stark and for a trial on the issue of damages. *Cicogna*, 345 N.C. at 490, 480 S.E.2d at 637.

## Costs

[3] Plaintiffs next argue that the trial court erred in awarding court costs against the Guardian ad Litem individually. Because we reverse the trial court's judgment, we vacate the trial court's order awarding costs in favor of Defendant. *See* N.C. Gen. Stat. § 6-1 (2009) ("To the party for whom judgment is given, costs shall be allowed[.]").

## Defendant's Cross-Assignments of Error

[4] Defendant argues that the trial court erred by denying its motions for summary judgment and directed verdict. We disagree. As discussed above, a directed verdict is proper when the evidence, viewed in the light most favorable to the non-moving party, is insufficient as a matter of law to submit the question to the jury. *Davis*, 330 N.C. at 322-23, 411 S.E.2d at 138. Summary judgment is proper where, taking the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665-66, 449 S.E.2d 240, 242 (1994).

Defendant cites N.C. Gen. Stat. § 99B-6 and argues that North Carolina's products liability act requires Plaintiffs to show, *inter alia*, that Defendant failed to "adopt a 'safer, practical, feasible, and otherwise reasonable alternative design' that would have prevented or minimized [Cheyenne's] injuries, [or that] the Taurus's design was 'so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.' " Defendant specifically argues that Plaintiffs' expert testimony regarding alternative designs "lacked any methodologically-sound support" because the experts cited to no testing to support their conclusions. However, Defendant cites no authority to support its contention that Plaintiffs' evidence was insufficient, nor that expert witness testimony of this nature required "testing" in order to withstand a directed verdict.

N.C. Gen. Stat. § 99B-6 provides in pertinent part:

(a) No manufacturer of a product shall be held liable in any product liability action for the inadequate design or formulation of the

product unless the claimant proves that at the time of its manufacture the manufacturer acted unreasonably in designing or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought, and also proves one of the following:

(1) At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.

(2) At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

(b) In determining whether the manufacturer acted unreasonably under subsection (a) of this section, the factors to be considered shall include, but are not limited to, the following:

(1) The nature and magnitude of the risks of harm associated with the design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product.

. . .

(6) The technical, economic, and practical feasibility of using an alternative design or formulation at the time of manufacture.

(7) The nature and magnitude of any foreseeable risks associated with the alternative design or formulation.

N.C. Gen. Stat. § 99B-6 (2009).

Plaintiffs counter by pointing out the weight of evidence offered at trial that supported their claims. Plaintiffs presented, *inter alia,* the testimony of Dr. Joseph Burton, a forensic pathologist. Dr. Burton testified that, based on the damage to the vehicle, he would have expected the passengers to suffer injuries, but not "catastrophic injury . . . . Maybe just a broken wrist." Dr. Burton further testified that Cheyenne was paralyzed from the accident because her shoulder belt was not snug and had "slack in it[,]" causing the belt to "snap-load[] the chest for her to have this injury."

Dr. Burton further testified that the injuries suffered by Cheyenne were the result of a process called "film spool." When "film spool" occurs, excess webbing material in a seatbelt continues to extend after the spool to which the material is secured ceases to move. The use of certain devices may prevent "film spool" from occurring during accidents by retracting, or otherwise restricting, any excess belt material during a crash. He testified that though these devices were available when the Taurus was manufactured and were, in fact, used by Defendant in certain of its products sold outside of the United States, none of these devices was present in the Taurus involved in the collision that caused Cheyenne's injuries.

Plaintiffs therefore offered evidence that, when viewed in the light most favorable to Plaintiffs, tended to show that Defendant manufactured a product which had the potential to cause the injury suffered by Cheyenne. Though there were alternative designs available at the time which were used by Defendant in similar products, the product used by Plaintiffs did not include these alternative designs. We hold that Plaintiffs presented sufficient evidence to survive Defendant's motions for summary judgment and directed verdict. Defendant's cross-assignments of error are therefore overruled.

Reversed in part, vacated in part, and remanded.

Judge BRYANT concurs.

Judge WYNN concurs in the result with a separate opinion.

WYNN, Judge concurring in the result.

I write separately to emphasize that judicial restraint guides our interpretation of the affirmative defense to product liability codified in N.C.G.S. § 99B-3 ("the modification defense"). Here, the language of the statute is clear and we are duty-bound to follow the law as written. Nonetheless, while I concur with the majority in following the clear language of the statute, I do so mindful that the statutory language appears inconsistent with general principles of negligence, modification defenses in all other states, and *possibly* even the intent of our legislature itself.

To begin, it warrants mention that Plaintiff's claims are based on Defendant's alleged negligence in the design of the Ford Taurus. It is a well-established principle in negligence cases that the plaintiff can-

not prevail "[w]hen it clearly appears from the evidence that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person." *Smith v. Sink*, 211 N.C. 725, 727, 192 S.E. 108, 109 (1937). It does not matter if the "responsible third person" is a party to the action; what matters is that the person's actions constitute intervening negligence insulating the defendant from liability. The fact that the case *sub judice* is a products liability action should not, without more, mean that intervening negligence is only given legal effect when the person who proximately caused the plaintiff's injury is a party to the suit. Indeed, this Court has stated that "[i]n an action to recover for injuries resulting from the negligence of a manufacturer, plaintiff must present evidence which tends to show that the product manufactured by defendant was defective *at the time it left defendant's plant*, and that defendant was negligent in its design of the product, in its selection of materials, in its assembly process, or in its inspection of the product." *Jolley v. General Motors Corp.*, 55 N.C. App. 383, 385, 285 S.E.2d 301, 303 (1982) (emphasis added) (citing *Cockerham v. Ward*, 44 N.C. App. 615, 262 S.E.2d 651, *disc. rev. denied*, 300 N.C. 195, 269 S.E.2d 622 (1980)).

The common sense corollary is that when a product is modified after "the time it left defendant's plant" the defendant is insulated from claims of negligent design, regardless of whether the modifier is a party to the action. Indeed, at first blush it seems illogical to subject a manufacturer to liability for injuries resulting from a modified product potentially quite different from that initially placed into the stream of commerce solely on the grounds that the modifier had not been joined in the action. However, "[i]n interpreting statutes, . . . it is always presumed that the Legislature acted with full knowledge of prior and existing law." *Investors, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977). Thus, in light of the fact that N.C.G.S. § 99B-3 directly addresses the affirmative defense of product modification in products liability actions, I concede that the language therein must control this Court's decision.

Nonetheless, it is troubling that strict adherence to the statutory language regarding modification defense represents so dramatic a departure from the view held in all other states regarding the legal effect of product modification on the liability of manufacturers. While a number of other states recognize a defense to such liability when the product has been modified, none limit the defense to apply only when modification was performed by a party to the litigation.

STARK v. FORD MOTOR CO.

[204 N.C. App. 1 (2010)]

Some of the statutes in other states explicitly allow for a defense when anyone other than the manufacturer or seller modifies the product. For example, Indiana provides a defense in a products liability action when the product is modified or altered "by any person after the product's delivery to the initial user or consumer . . . ." Ind. Code § 34-20-6-5 (LexisNexis 2008). Similarly, in Kentucky a modification defense to products liability applies "to alterations or modifications made by any person or entity, except those made in accordance with specifications or instructions furnished by the manufacturer." Ky. Rev. Stat. Ann. § 411.320 (West 2006); *see also Smith v. Louis Berkman Co.*, 894 F.Supp. 1084, 1090 (W.D. Ky. 1995) ("KRS 411.320 indicates the Kentucky legislature's intent to benefit product manufacturers by precluding their tort liability when their products are modified or altered by someone else.").

Other statutes fail to even mention the identity of the modifier. In Michigan, "[a] manufacturer or seller is not liable in a product liability action for harm caused by an alteration of the product unless the alteration was reasonably foreseeable." Mich. Comp. Laws § 600.2947(1) (2000). In North Dakota, the modification defense applies when the alteration or modification "occurred subsequent to the sale by the manufacturer or seller to the initial user or consumer." N.D. Cent. Code § 28-01.3-03 (2006).

Finally, there are state statutes which provide a modification defense as long as the manufacturer/seller is not responsible for the modification. For example, the Idaho statute defines the type of alteration or modification giving rise to a defense in a products liability action as that which "occurs when a person or entity other than the product seller changes the design, construction, or formula of the product, or changes or removes warnings or instructions that accompanied or were displayed on the product." Idaho Code Ann. § 6-1405(4)(a) (2004).

In sum, after reviewing products liability statutes in states other than North Carolina, it appears that the clear language under our statute, N.C.G.S. § 99B-3, creates within our borders a unique legal regime with respect to products liability. However, I recognize and respect the fact that "[t]he decisions from other jurisdictions, while helpful in construing the provisions of our statute, are not controlling; neither is the interpretation placed upon a statute similar to ours, binding on this Court." *Stanley v. Hyman-Michaels Co.*, 222 N.C. 257, 266, 22 S.E.2d 570, 576 (1942).

I also respect the principle that "[w]hen the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Diaz v. Division of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citation omitted). Here, I agree with the majority that the legislature's use of the word "party" renders the language of the statute clear and unambiguous. I further note that even if the language were "ambiguous," there is no definitive proof in the legislative history of N.C.G.S. § 99B-3 that the General Assembly intended to apply a contrary meaning to the word "party." *See id.* ("[W]hen the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.").

On 29 January 1979, Senate Bill 189 was introduced in the N.C. Senate. This bill, which was the first attempt in that legislative session to pass products liability reform, stated:

No manufacturer or seller of a product shall be held liable in any product liability action where a contributing cause of the injury, death or damage to property was either (a) an alteration or modification of the product which occurred after the product left the control of the manufacturer or seller, or (b) a use of the product in a manner for which the product was not originally designed, manufactured, recommended or warranted.

S.B. 189, 1979 Gen. Assem., Reg. Sess. (N.C. 1979). Notably, this initial conception of the modification defense focused on the time when modification took place (i.e. after the product left the control of the manufacturer) rather than the identity of the modifier.

On the same day that Senate Bill 189 was introduced, House Bill 235 was introduced with the exact same language. On 28 February 1979, a joint public hearing of the committees considering Senate Bill 189 and House Bill 235 met to discuss the proposed legislation. There was no mention at this joint public hearing about limiting the modification defense to modifiers that were parties in the products liability action.

Indeed, the first reference to the identity of the modifiers was added on 8 March 1979 when Senate Bill 189 was amended to read

No manufacturer or seller of a product shall be held liable in any product liability action where a contributing cause of the injury, death or damage to property was either (a) an alteration or mod-

ification of the product which occurred after the product left the control of such manufacturer or such seller *if the alteration or modification was not done by the manufacturer or seller,* or (b) a use of the product in a manner for which the product was not originally designed, manufactured, recommended or warranted.

S.B. 189, 1979 Gen. Assem., Reg. Sess. (N.C. 1979) (as amended 8 Mar. 1979) (emphasis added). This amendment limited the defense to modifications made by someone other than the manufacturer or seller, but again did not indicate that the modifier must be a party to the case.[1]

On 30 March 1979, Representative Martin Lancaster introduced House Bill 993 as a proposed alternative to Senate Bill 189. House Bill 993 was, according to Rep. Lancaster, the Uniform Products Liability Bill prepared by the U.S. Department of Commerce. Rep. Lancaster stated "[t]he Senate Bill provides that the manufacturer or seller of a product is not liable when the injury is the result of an alteration or modification of the product which occurred after the product left their hands. My Bill will provide that same protection." *Hearing on H.R. 993 Before H. Judiciary II Comm.,* 1979 Gen. Assem., Reg. Sess. (N.C. 1979) (statement of Rep. Martin Lancaster, Member, Judiciary II Comm.). Again, there was no indication that the availability of such protection depended on whether the modifier was a party to the case.

House Bill 993 was the first draft of products liability legislation to include the word "party" but it did so as follows:

A product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a *third party* unless:

(1) the alteration or modification was in accordance with the product seller's instructions or specifications;

(2) the alteration or modification was made with the express consent of the product seller; or

(3) the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller.

H.R. 993, 1979 Gen. Assem., Reg. Sess. (N.C. 1979) (emphasis added).

---

1. A subsequent amendment, adopted on 15 March 1979, clarified that for the modification defense to apply the modification must have been a proximate cause of the injury. S.B. 189, 1979 Gen. Assem., Reg. Sess. (N.C. 1979) (as amended 15 Mar. 1979).

The three proposed bills concerning products liability (House Bill 235, House Bill 993, and Senate Bill 189) were referred to a special study subcommittee of the House Judiciary II Committee. The subcommittee drafted a proposed Committee substitute and this House Substitute bill was given a favorable report. This House Committee substitute bill is the first one that introduced the "by a party other than the manufacturer or seller" language. Ultimately, this language was retained in N.C.G.S. § 99B-3.

My research reveals no indication as to why the members of the special study subcommittee of the House Judiciary II Committee chose to add language to the statute. This is disconcerting in light of the fact that all of the previous versions of the modification defense seem to envision broad protection for modifiers whose products were modified, regardless of whether the modifier was a party to the suit, as long as the modification occurred after the product left the manufacturer's control. However, basic rules of statutory construction dictate that our legislature does not intend *sub silentio* to enact statutory language that it has replaced with other words or phrases. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-43, 94 L. Ed. 2d 434, 454 (1987) (citation omitted).

Furthermore, "the General Assembly is presumed to have acted advisedly and with a knowledge of the meaning of language . . . and it will never be assumed, if any other conclusion is permissible, that it has done a vain and foolish thing . . . ." *Bank v. Loven*, 172 N.C. 666, 670-71, 90 S.E. 948, 950 (1916) (internal citation omitted). Therefore, we are constrained to hold that the language of the modification defense as written limits its availability to situations in which the modifier is a party to the litigation.

It is worthwhile to query whether the burden of the legislature's limitation of the modification defense to "parties" could have been mitigated by adding Tonya and Gordon Stark as new parties in this case. The North Carolina Rules of Civil Procedure permit a defending party to implead a new party "who is or may be liable to him for all or part of the plaintiff's claim against him." N.C. Gen. Stat. § 1A-1, Rule 14(a) (2009). As such, Rule 14 allows impleader when the third-party defendant may be liable to the original defendant for contribution or indemnification. *Spearman v. Pender Cty. Bd. of Educ.*, 175 N.C. App. 410, 412, 623 S.E.2d 331, 333 (2006). Furthermore, "[i]t is not necessary that the third-party defendant's liability be previously determined." *Rouse v. Maxwell*, 40 N.C. App. 538, 543, 253 S.E.2d 326, 329, *appeal dismissed*, 298 N.C. 570, 261 S.E.2d 124 (1979).

Indeed, in the instant case, Defendant was granted leave to file a third-party complaint seeking indemnification or, in the alternative, contribution from Tonya and Gordon Stark. The trial court granted this motion and subsequently ordered the severance of the third-party suit from the principal action to avoid delaying the trial in the latter. Although this severance ultimately rendered the modification defense unavailable to Defendant, Defendant did not argue on appeal that the severance was error, and as such that issue is not before the Court.

In conclusion, because the language of the statute is clear, I agree with its application in this case. If in fact the legislature intended the modification defense to apply when the modifier is not a party to the products liability action, it can revisit the issue and amend the statute. As written, however, the language is subject to only its plain and ordinary interpretation, which comports with that of the majority.

