JAMES R. BRINKLEY v. NATIONWIDE MUTUAL INSURANCE COMPANY
AND
WILSON TRANSPORT LEASE, INC., v. NATIONWIDE MUTUAL INSUR-
ANCE COMPANY.

(Filed 25 August, 1967.)

**1. Trial § 21—**

On motion to nonsuit, plaintiff's evidence is to be taken as true, and all
the evidence considered in the light most favorable to plaintiff, and de-
fendant's evidence which tends to impeach or contradict plaintiff's evidence
must be disregarded.

**2. Trial § 18—**

The functions of the judge and the jury are separate and distinct; the
weight and credibility of the evidence is within the sole province of the
jury and they may believe any part or none of it.

**3. Trial § 22—**

In order to overrule a motion to nonsuit there must be legal evidence
of every material fact necessary to support a verdict, and if the material
facts are in dispute and the evidence in regard thereto is such that con-
flicting conclusions may reasonably be reached, nonsuit is not proper.

**4. Insurance § 48c—**

In this action upon a policy of garage liability insurance, plaintiff's evi-
dence disclosed that the insured, a used-car dealer, gave a named person
a written 96-hour permit for the use of a car, as provided by G.S. 20-79(b),
and that the accident in question occurred within the 96-hour period. The
defendant insurer offered evidence that the driver had permission to use
the car only until a Monday morning and that the accident occurred on a
Tuesday afternoon. *Held:* The conflicting evidence as to whether the
driver was operating the automobile with the permission of the owner-
insured at the time of the accident was properly submitted to the jury.

**5. Trial § 31—**

A request by defendant for a directed verdict or for a peremptory in-
struction is properly denied when the evidence of plaintiff is sufficient to
carry the case to the jury.

APPEAL by defendant from *Cohoon, J.,* September-October 1966
Civil Session of WILSON.

Plaintiffs, in separate actions, seek to fix liability upon defend-
ant insurance company under a garage liability insurance policy
issued by it to James E. Allen, hereinafter called J. E. Allen, the
operator of a used-car business in Smithfield, North Carolina. The
actions were consolidated for trial. Plaintiff, J. R. Brinkley, insti-
tuted a civil action to recover the sum of $4,000, the amount fixed
by judgment due for bodily injuries he sustained in an accident as
the result of the negligent operation of a 1954 Cadillac automobile
owned by J. E. Allen, and operated by Hayman Casper Allen, here-

inafter called H. C. Allen. Plaintiff Wilson Transport Lease, Inc., instituted a civil action to recover the sum of $1,078, the amount fixed by judgment due for damage to its truck sustained while being driven by James R. Brinkley, its co-plaintiff, in an accident as the result of the negligent operation of the 1954 Cadillac automobile owned by J. E. Allen and operated by H. C. Allen. The accident occurred on 3 November 1964.

At the time of the accident J. E. Allen, a dealer in second-hand automobiles in Smithfield, held a policy of garage automobile liability insurance issued to it by the defendant, which was in full force and effect at the time of the accident. A clause of the policy provided coverage for the 1954 Cadillac automobile owned by J. E. Allen when operated by J. E. Allen or with his permission. Plaintiffs' evidence tended to show these facts: They introduced into evidence the following document:

"Plaintiffs' Exhibit #1

"96-HOUR PERMIT FOR USE OF DEALER PLATE

"SECTION 1. TO BE COMPLETED BY SELLING DEALER WITH PEN AND INK. VOID IF ALTERED.

"I/we the undersigned, a licensed dealer in the State of North Carolina, do hereby state that the vehicle described is the property of the undersigned and that it and the dealer plate designated are loaned to the person indicated below for a period of 96 hours from the time indicated. It is further stated that no compensation has or will be received for the use of this vehicle.

"Vehicle and plate loaned to      Hayman Allen

"Address     P. O. Box 52, Smithfield, N. C.

"Make of Vehicle   1954 Cat        Motor No.

"Serial No.        546250297         Dealer Plate No.   70250

"Date of issuance of this permit     10-31   Hour   A.M. 9:30 P.M.

"     Smithfield Used Cars              Smithfield, N. C.
            (Dealer)                              (Address)

"By                     James E. Allen
                  (Authorized Representative)

"SECTION 2. TO BE COMPLETED BY PERSON RECEIVING VEHICLE WITH PEN AND INK. VOID IF ALTERED.

"                   Hayman Allen
            Signature of Person Receiving Vehicle

"

"Notice to Dealer and Operator: Vehicles owned by dealers and displaying dealer demonstration plates may be loaned for personal use of persons other than those employed in the dealer's business for a period of not more than 96 hours. The 96-Hour Permit must be in possession of operator at time of operation. THIS PERMIT CANNOT BE RENEWED. ONE PERMIT ONLY PERMISSIBLE.

North Carolina Department of Motor

"Form 37                                                      Vehicles"
(Rev. 9/59)

Plaintiff James R. Brinkley testified in substance: He secured a judgment at the November Session against H. C. Allen. He is the same person that was involved in the collision that gave rise to the judgment referred to in the complaint. H. C. Allen has died since he obtained the judgment. Whereupon, plaintiffs rested. Defendant moved for a judgment of compulsory nonsuit, which the court denied, and defendant excepted.

Defendant's evidence tends to show these facts: J. E. Allen is in the used-car business under the name of Smithfield Used Cars, in Smithfield, North Carolina. He is a licensed dealer. On Saturday, 31 October 1964, he saw H. C. Allen, who is not related to him, at his place of business. He had a conversation with him relative to a 1954 Cadillac automobile which belonged to J. E. Allen. About 9:30 p.m. on that day he gave H. C. Allen permission to use the 1954 Cadillac automobile. H. C. Allen said he was going down to Benson to spend the night with one of his sisters. He had a sister also at Four Oaks. His sisters were going to help him a little in buying the automobile. He said he would like to drive it down, spend the night with them and have dinner with them in Benson on Sunday, and he would like for them to see the car. He told him he would let him have the car provided that he would meet him at his place of business at 8 o'clock on Monday morning. He gave him a 96-hour permit to drive the car. As an automobile dealer he is required to give such permits to people that he lends an automobile to. He has never seen any other form issued by the Department of Motor Vehicles except the form that he gave to H. C. Allen. The car was not returned Monday morning, and J. E. Allen began a search for it and for H. C. Allen. He did not give H. C. Allen permission to keep the car after Monday morning. When he was talking to H. C. Allen, there was nothing said about his having the car for 96 hours. He discovered that the Cadillac automobile had been involved in a wreck during the afternoon of Tuesday, 3 November 1964.

Leroy Allen, a son of H. C. Allen, testified that his father told him he had promised to return the car on Monday morning. Thomas S. Faison, a casualty claims adjuster for defendant, testified that H. C. Allen told him he had agreed to bring the car back Monday morning.

At the close of all the evidence, defendant moved for a judgment of compulsory nonsuit, which the court denied, and the defendant excepted. Defendant also moved the court for a directed verdict in its favor which the court denied, and the defendant excepted. Defendant further moved the court that the jury be given a peremptory instruction to answer the only issue, No, which the court denied and defendant excepted.

The court submitted to the jury one issue: "Was Haymon Casper Allen, at the time of the collision, driving the Cadillac automobile with the express permission of the owner, James E. Allen, as alleged in the Complaint?" The jury answered the issue, Yes.

From a judgment that the individual plaintiff should recover from the defendant $4,000 with legal interest from 23 November 1965 until paid, and that the defendant pay the costs as taxed by the clerk as provided by the judgment in the action entitled *"James R. Brinkley v. Hayman Casper Allen,"* dated 23 November 1965, as duly recorded, and from a judgment that the corporate plaintiff should recover from the defendant the sum of $1,078 with legal interest thereon from 23 November 1965, and that the defendant pay the costs as taxed by the clerk as provided by the judgment in the action entitled *"Wilson Transport Lease, Inc., v. Hayman Casper Allen,"* dated 23 November 1965, as duly recorded, defendant appeals.

*Lucas, Rand, Rose, Morris & Meyer for defendant appellant.*
*Gardner, Connor & Lee by J. M. Reece for plaintiff appellees.*

PARKER, C.J. It is hornbook law that on a motion to nonsuit plaintiff's evidence is to be taken as true, and all the evidence must be considered in the light most favorable to plaintiff, giving him the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence. Defendant's evidence which tends to impeach or contradict plaintiff's evidence is not to be considered, but defendant's evidence may be considered to the extent that it is not in conflict with plaintiff's evidence and tends to make clear or explain plaintiff's evidence. 4 Strong's N. C. Index, Trial, § 21. "Discrepancies and contradictions, even in plaintiff's evidence, are for the twelve and not for the court," *Brafford v. Cook,* 232 N.C. 699, 62 S.E. 2d 327, and do not justify a nonsuit.

*Keaton v. Taxi Co.*, 241 N.C. 589, 86 S.E. 2d 93. Plaintiffs' evidence discloses that J. E. Allen gave H. C. Allen a written 96-hour permit for the use of his 1954 Cadillac. In the body of this instrument this language is used: "I/we the undersigned, a licensed dealer in the State of North Carolina, do hereby state that the vehicle described is the property of the undersigned and that it and the dealer plate designated are loaned to the person indicated below for a period of 96 hours from the time indicated." The body of this instrument shows that the date of the permit was October 31, and the time was 9:30 p.m. The accident, which is the basis of this action, occurred within the 96-hour period after his receipt of the possession of the 1954 Cadillac automobile. It is true that the defendant offered evidence that he gave him permisson to use the automobile only until Monday morning, and that the accident occurred after then. It is also true that H. C. Allen's son and defendant's claims adjuster testified that H. C. Allen promised to return the automobile on Monday morning.

G.S. 20-79 (b) is concerned in part with a dealer in motor vehicles in respect to a person operating a car belonging to a dealer in automobiles, and provides in relevant part: "Provided further, that said persons shall, at all times while operating a motor vehicle under the provisions of this section, have in their possession a certificate on such form as approved by the Commissioner from the dealer, which shall be valid for not more than ninety-six hours."

The functions of the jury and the judge are separate and distinct, and neither may invade the province of the other. It is also hornbook law that the weight and credibility of the evidence remains in the province of the jury. *Campbell v. Trust Co.*, 214 N.C. 680, 200 S.E. 392; *Bank v. Stone*, 213 N.C. 598, 197 S.E. 132. In weighing the credibility of the testimony, the jury has the right to believe any part or none of it. *Brown v. Brown*, 264 N.C. 485, 141 S.E. 2d 875. For us to say as a matter of law that H. C. Allen was not given express written permission by J. E. Allen to drive this car for 96 hours is for us to consider the evidence not in the light most favorable to plaintiffs. It is manifest from the evidence in this case the jury chose, as it had an inherent right to do, to believe that J. E. Allen gave H. C. Allen permission to drive this automobile for 96 hours as appears in the written document signed by J. E. Allen, and introduced in evidence by the plaintiffs, and did not choose to believe the oral part of J. E. Allen's testimony that permission was granted merely until Monday morning. There is legal evidence of every material fact necessary to support the verdict. This is said in 4 Strong's N. C. Index, Trial, § 22, p. 321: "Nonsuit may not be properly entered if the material facts are in dispute and the evidence in regard to the

facts is such that conflicting conclusions may reasonably be reached thereon. If upon the whole evidence there are inferences tending to support plaintiff's case, or if there is more than a scintilla of evidence in support of plaintiff's claim, or there is any substantial evidence supporting the essential elements of the cause of action, nonsuit is properly denied."

This is stated in *Gales v. Smith*, 249 N.C. 263, 106 S.E. 2d 164: "It is noted that discrepancies and contradictions in the evidence, even though such occur in the evidence offered in behalf of plaintiff, are to be resolved by the jury, not by the court."

This is said in Supplement to 4 Strong's N. C. Index, Trial, § 18:

> "Upon motion to nonsuit, the function of the court is to determine only whether the facts and circumstances in evidence, considered in the light most favorable to the plaintiff, tend to make out and sustain the cause of action alleged in the complaint. And it is the function of the jury alone to weigh the evidence, determine the credibility of the witnesses and the probative force to be given their testimony, and determine what the evidence proves or fails to prove. In weighing the credibility of the testimony, the jury has the right to believe any part or none of it."

In *Keith v. Gas Co.*, 266 N.C. 119, 146 S.E. 2d 7, it is said:

> "Upon the defendants' motions for judgment of nonsuit, the plaintiff's evidence is to be interpreted in the light most favorable to her, all reasonable inferences favorable to her must be drawn therefrom, conflicts therein are to be resolved in her favor and evidence of the defendant establishing a different factual situation must be disregarded."

The court properly denied the defendant's motion for judgment of compulsory nonsuit. The court correctly denied the motion for a directed verdict for the simple reason that plaintiffs' evidence is sufficient to carry the case to the jury, and "an instruction to answer an issue in a specified way is a directed verdict and is never proper when the question is for the determination of a jury." 4 Strong's N. C. Index, Trial, § 31. The court correctly denied defendant's motion for a peremptory instruction for the evidence is conflicting upon the issues submitted to the jury. 4 Strong's N. C. Index, Trial, § 31.

Defendant in its brief makes no reference to the form of the judgments entered in this consolidated case.

In the trial below we find

No error.