IN THE SUPREME COURT OF NORTH CAROLINA

No. 189A22

Filed 23 August 2024

BOTTOMS TOWING & RECOVERY, LLC

v.

CIRCLE OF SEVEN, LLC

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 283 N.C. App. 446 (2022), affirming an order and judgment entered on 26 February 2021 by Judge Quentin T. Sumner in Superior Court, Nash County. Heard in the Supreme Court on 18 April 2024.

*Fields & Cooper, PLLC, by Ryan S. King and John S. Williford Jr., for petitioner-appellee.*

*Q Byrd Law, by Quintin D. Byrd, for respondent-appellant.*

DIETZ, Justice.

This appeal involves a dispute over a few thousand dollars for a truck that got towed. In the trial court and the Court of Appeals, the truck's owner raised a series of straightforward legal arguments about the validity and amount of the towing company's lien. The lower courts rejected those arguments.

The appeal then came to this Court based on a dissent at the Court of Appeals that does not have anything to do with the party's arguments. The dissent concocted a new theory for the truck owner and reasoned that, based on that new theory, the

trial court erred.

The dissent's theory of the case is not properly before this Court. We do not review issues raised by a Court of Appeals dissent that were not first raised and argued by the parties. *See M.E. v. T.J.*, 380 N.C. 539, 562 (2022). This rule is particularly apt here because addressing the dissent's theory requires evidence that no party presented below and fact-finding that never took place in the trial court. Accordingly, we decline to address the matters raised by the dissent and affirm the decision of the Court of Appeals.

**Facts and Procedural History**

Circle of Seven is a limited liability company that has now ceased operations. Several years ago, Circle of Seven left a Dodge Ram truck on property that it lost in a foreclosure sale. At the time, Circle of Seven's sole managing member, Sainte Deon Robinson, was incarcerated after pleading guilty to federal crimes. Robinson left Eulanda Elliot, a Circle of Seven employee, in charge of the company's affairs when he went to prison.

The purchaser of the foreclosed property hired Bottoms Towing & Recovery to tow the Dodge Ram away from the property. Bottoms Towing later petitioned to sell the truck to satisfy the lien for unpaid towing and storage expenses. Circle of Seven opposed the sale and challenged the amount of the purported lien.

The trial court held a hearing to address the contested issues. Relevant to this appeal, Circle of Seven presented the testimony of both Robinson and Elliot. Elliot

testified that she repeatedly attempted to pick up the truck from Bottoms Towing but was unable to do so because Bottoms Towing did not believe she had sufficient proof that she was authorized to take the truck. Circle of Seven asked the trial court to reduce the amount of the lien by removing storage costs for the period after Bottoms Towing refused to release the truck to Elliot.

In addition, Robinson testified that he had the truck serviced shortly before it was towed and had documentation indicating the truck's mileage at that time was roughly 81,000 miles. Later, when Circle of Seven sought to reacquire the truck, the mileage was roughly 90,000 miles. Bottoms Towing also had the truck serviced and made cosmetic changes such as adding chrome wheel covers and removing vinyl decals. Circle of Seven argued that this evidence proved Bottoms Towing had used the truck without authorization. It argued that the lien amount should be reduced because Bottoms Towing cannot charge for storage time when the towing company was improperly using the truck rather than simply storing it.

After the hearing, the trial court entered an order and judgment reducing the lien amount by $1,427.14 due to unnecessary maintenance and cosmetic alterations. The trial court also found that Bottoms Towing drove the truck for approximately 250 miles when the truck should have been stored, and therefore further reduced the lien by $62.50 to account for the time when Bottoms Towing used the truck.

Circle of Seven appealed, arguing that the trial court had not reduced the lien by a sufficient amount based on the evidence. The Court of Appeals issued a divided

opinion affirming the trial court's order and judgment. *Bottoms Towing & Recovery, LLC v. Circle of Seven, LLC*, 283 N.C. App. 446 (2022). The majority held that competent evidence supported the trial court's findings and corresponding conclusions concerning the appropriate amount of the lien. *Id.* at 455–56.

The dissent argued that Bottoms Towing unlawfully converted the truck for personal use and that the case should be remanded for the trial court to reduce the lien based on the truck's loss in fair market value as a result of the conversion. *Id.* at 457–58 (Tyson, J., concurring in the result in part and dissenting in part).

Circle of Seven timely filed a notice of appeal to this Court based on the dissent. It also petitioned for discretionary review, asking this Court to review the issues that it raised in the lower courts but that the dissent did not address. This Court denied the petition for discretionary review as to additional issues.

## Analysis

We begin our analysis by examining the scope of the issues brought before us based on the dissent. Because we denied Circle of Seven's petition for discretionary review, the sole basis for our appellate jurisdiction in this case is the dissent at the Court of Appeals. *See* N.C.G.S. § 7A-30(2) (2023).[1]

---

[1] The General Assembly repealed the portion of N.C.G.S. § 7A-30 that conferred a right to appeal to the Supreme Court based on a Court of Appeals dissent. Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(d). This appeal was filed and docketed at the Court of Appeals before the effective date of that act.

Under Rule 16(b) of the Rules of Appellate Procedure, our jurisdiction in this circumstance is limited to those issues "specifically set out in the dissenting opinion as the basis for that dissent." N.C. R. App. P. 16(b). We recently emphasized that this requirement limits our review solely to those issues for which the dissent provides "reasoning." *Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 575 (2023); *Morris v. Rodeberg*, 385 N.C. 405, 415 (2023). On matters where the dissent does not provide any reasoning, this Court lacks jurisdiction unless we separately allow discretionary review of those additional issues. *See Cryan*, 384 N.C. at 575.

Here, the dissenting judge concurred in the majority's "conclusion that petitioner possesses a valid statutory lien" but asserted that the trial court "erred in its calculation of the offset to reduce the lien amount due to Bottoms' unlawful conversion and personal use" of the truck. *Bottoms Towing*, 283 N.C. App. at 456 (Tyson, J., concurring in the result in part and dissenting in part). The dissent reasoned that Bottoms Towing's unauthorized use of the truck while it should have been stored awaiting pickup was a form of unlawful "conversion." *Id.* at 457. "Our General Statutes should provide a statutory remedy and offset" for this unlawful conversion, the dissent reasoned. *Id.*

Because the dissent believed the trial court's reduction of the claimed lien amount was not a permissible way to "compute this offset value against the lien," the dissent would have reversed the trial court's order and judgment and remanded for the trial court to assess "the loss in value" of the truck—in other words, an offset

based on the reduction in the truck's "book value" due to Bottoms Towing's unauthorized use. *Id.* at 457–58.

The dissent provided extensive reasoning for this position, and we therefore have appellate jurisdiction over the issue. *See Cryan*, 384 N.C. at 575. But possessing appellate jurisdiction does not automatically mean the issue is one that we can properly address. It is well-settled that "the Court of Appeals may not address an issue not raised or argued by [the appellant] for it is not the role of the appellate courts to create an appeal for an appellant." *In re R.A.F.*, 384 N.C. 505, 512 (2023) (cleaned up). This rule applies equally to both the Court of Appeals majority and the dissent.

Indeed, even where the dissent raises issues that would void the trial court's judgment, this Court has declined to examine those issues because the parties did not raise them at the Court of Appeals. *See M.E.*, 380 N.C. at 564. In *M.E.*, for example, the dissent argued that the plaintiff failed to join necessary parties under Rule 19 of the Rules of Civil Procedure, which rendered the trial court's order void *ab initio*. *Id.* at 551–52. We held that "the necessary joinder issue was raised neither by defendant nor by the trial court *ex meru motu* and was not mentioned until the Court of Appeals dissent. Accordingly, this issue is not properly before this Court, and we therefore decline to consider it." *Id.* at 564.

Here, Circle of Seven never raised a conversion argument, never argued that Bottoms Towing's unauthorized use had reduced the value of the truck, and never

presented any evidence as to the value of the truck. This makes sense because Circle of Seven operated under entirely different legal theories in the courts below. The company argued that the applicable statute only permitted a lien for unpaid amounts related to the towing and storing of the truck. *See* N.C.G.S. § 44A-2 (2023). As a result, Circle of Seven argued that the lien must be reduced for two reasons.

First, it argued that it sent Elliott, its authorized representative, to pick up the truck, but Bottoms Towing refused to release it. Thus, it argued that the lien "amount is limited to the period of 5 March 2021 through 27 March 2021, representing the date of the tow through the date Ms. Elliott contacted Petitioner to retrieve the Truck."

Second, Circle of Seven argued that the truck's mileage and other evidence showed Bottoms Towing had driven the truck for personal use. This, it argued, meant the trial court should determine when the truck was being used, rather than stored, and "reduce the amount of the lien" because Bottoms Towing "could not be said to have been storing the Truck when using it for personal use."

Importantly, Circle of Seven did not bring a claim for conversion and did not make any argument that Bottoms Towing diminished the value of the truck—the sole basis for the dissent in this case. That issue "was not mentioned until the Court of Appeals dissent." *See M.E.*, 380 N.C. at 564.

If we were to review this issue, it would be unjust for a number of reasons. First, and most obviously, it would require departing from the well-settled procedural

rule that appellate courts may not address issues not raised by the parties because "it is not the role of the appellate courts to create an appeal for an appellant." *In re R.A.F.*, 384 N.C. at 512 (cleaned up). The public, and other jurisdictions that may be called upon to recognize our state's court judgments, expect us to apply these procedural rules uniformly to all litigants who appear before us.

Second, Bottoms Towing never had an opportunity to disprove the fact-intensive assertions made by the dissent. There is no evidence in the record concerning the "book value" of the truck or how much that value depreciated, or any of the other facts necessary to calculate the "damages" that the dissent describes based on "the difference between the market value immediately before the injury and the market value immediately afterwards." *Bottoms Towing*, 283 N.C. App. at 457–58.

The dissent's approach to this case would effectively require the trial court to start over from the beginning—conduct another hearing, receive evidence on the change in the truck's fair market value, and then enter an entirely different order. Our rules of preservation exist precisely to discourage this sort of unfair do-over in the trial court. Circle of Seven had the opportunity to present this evidence to the trial court and the opportunity to raise this issue in its appellate briefing to the Court of Appeals. It did neither—understandably so, because Circle of Seven had different (and, to be fair, more appropriate) arguments to contest the claimed storage charges under the language of the applicable statute. *See* N.C.G.S. § 44A-2. This is a statutory

proceeding to authorize the sale of a motor vehicle under a lien. The dissent's theory concerns affirmative claims for conversion or negligence on the part of a bailee. These are claims that must be raised in a complaint or counterclaim, not as statutory defenses to the sale proceeding.

Accordingly, the conversion theory raised by the dissent is not properly before us and we decline to address it. Because this is the only issue before this Court (as we denied Circle of Seven's petition for discretionary review as to additional issues), our review is at an end.

## Conclusion

We affirm the decision of the Court of Appeals.

AFFIRMED.

Justice EARLS dissenting.

Circle of Seven, LLC and Bottoms Towing & Recovery, LLC have a genuine property dispute which is properly before this Court based on a dissent in the Court of Appeals pursuant to N.C.G.S. § 7A-30(2), a statute that has now been amended to eliminate such appeals in the future. *See* N.C.G.S. § 7A-30(2) (2023); Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(d)–(e), https://www.ncleg.gov/Sessions/2023/Bills/House/PDF/H259v7.pdf (eliminating right of appeal based on a dissent for cases filed in the Court of Appeals on or after 3 October 2023).

Bottoms Towing contends that it acted in good faith when it towed and stored Circle of Seven's truck and that it properly seeks reimbursement for the associated fees by way of a lien on the truck. Circle of Seven contends that despite repeated attempts to recover possession of the truck, Bottoms Towing improperly refused to release it and not only purposefully amassed months of storage fees, which it then used as the basis for the lien, but also made unauthorized changes to the truck and used it extensively for personal purposes, driving it almost 10,000 miles while it was supposedly in storage. At the trial level, considerable evidence was introduced by Circle of Seven to support its version of events. The legal question for the appellate courts is whether the trial court applied the law correctly to the facts it found to be

established by the evidence. I dissent because in my view this Court takes a hyper-technical and unjustifiably narrow approach to determining whether Circle of Seven made the necessary legal arguments regarding conversion at trial and whether the dissenting opinion in the Court of Appeals legitimately addressed issues properly before it.

The majority declines to reach the merits of the appeal because, in its view, Circle of Seven's evidence about Glenn Bottoms's unauthorized personal use of the truck and the impact that should have on the proper amount of any lien on the truck did not raise the issue of conversion. However, in fact, Circle of Seven did raise the issue of conversion at the trial court and with the Court of Appeals, it just did not use that specific terminology. Recently, this Court professed a disinclination to rest on mere technicalities of this nature. *See State v. Singleton*, 900 S.E.2d 802, 823–24 (N.C. 2024) ("As we recognized in 1898, we reiterate that '[t]he practical sense of the age demands' that technicalities should not carry the day . . . ." (first alteration in original) (quoting *State v. Hester*, 122 N.C. 1047, 1050 (1898))). It is unfair to do so here.

In addition, the majority's decision not to reach the merits of this case rests on a principle that is only selectively followed. Contrary to the majority's authoritative-sounding recitation of a supposedly cardinal rule of appellate practice, this Court does address issues and decide cases on grounds that were not raised or argued below. *See, e.g., Stark ex rel. Jacobsen v. Ford Motor Co.*, 365 N.C. 468, 480, 483 (2012) (engaging

in a sufficiency of the evidence analysis not ruled on by the Court of Appeals); *Ha v. Nationwide Gen. Ins. Co.*, No. 312A19-2, slip op. at 10 (N.C. Aug. 23, 2024) (deciding the case on "narrower grounds" not raised by the parties); *Old Republic Nat'l Title Ins. Co. v. Hartford Fire Ins. Co.*, 369 N.C. 500, 507, 510 (2017) (analyzing a judicial estoppel issue that was not briefed or argued by the parties); *N.C. Farm Bureau Mut. Ins. Co. v. Hebert*, 385 N.C. 705, 715–16 (2024) (addressing "whether [a] defendant may stack and compare in order to activate his [underinsured motorist] coverage" despite the parties never having briefed or argued this theory below). This makes the majority's decision not to rule on the merits in this case all that more egregious.

## I.    Background

In 2018, Sainte Deon Robinson—the head of Circle of Seven, LLC—was charged with and pled guilty to a federal tax crime. On 22 March 2019, Robinson was sentenced to a thirty-month active sentence, which commenced on 10 September 2019. Before entering prison, Robinson gave Eulanda Elliot, a Circle of Seven employee, express authority to handle the company's affairs.

In July 2018, Anne Cliett, one of Robinson's creditors, started foreclosure proceedings against Robinson for a property located on Wesleyan Boulevard in Rocky Mount, North Carolina. Cliett subsequently purchased this property at a judicial sale. Because Robinson had left personal belongings on the Wesleyan property—including the 2018 Dodge truck, which is the subject of this dispute—Elliot contacted Dan Howell, who oversaw Cliett's affairs, to arrange for the retrieval of Robinson's

property. However, Howell instructed Elliot to make those arrangements with Cliett's attorney, John Williford.

As was agreed, Elliot arrived at the Wesleyan property on 28 February 2020 with a U-Haul truck to retrieve Robinson's remaining items. While Robinson testified that he had left one key in the truck's ignition before locking up the Wesleyan property and beginning his period of incarceration, that key was not available to Elliot when she arrived to retrieve Robinson's belongings. The existence of the truck's key remains disputed as Mr. Bottoms testified that because he was unable to locate a key for the Dodge truck, he incurred a $150 fee to contract with a locksmith to create one. Since Elliot did not have a key for the truck, she was unable to start it, let alone remove it from the Wesleyan property. Elliot communicated this to Howell, and the two arranged for her to retrieve the truck at a later, undetermined date.

Eight days later, on 5 March 2020, Cliett contracted with Bottoms Towing & Recovery, LLC to remove the Dodge truck from the Wesleyan property for $150 and to store it for $40 per day. Accordingly, Mr. Bottoms towed the truck and stored it at his place of business on May Drive in Rocky Mount, North Carolina. On 13 March 2020, Mr. Bottoms filed the necessary documents with the North Carolina Division of Motor Vehicles (DMV) to sell the truck under a possessory lien pursuant to N.C.G.S. § 44A-2(d).

Elliott made several attempts to retrieve the Dodge truck. In doing so, she placed five calls to Williford's law firm, Fields & Cooper, PLLC; sixteen calls to

Howell; and eight calls to Mr. Bottoms. Elliot's repeated attempts to regain possession of the truck yielded differing responses from Mr. Bottoms.

On 27 March 2020 when Elliot contacted Mr. Bottoms the first time, he directed her to speak with Howell. Then on 30 March 2020, Mr. Bottoms informed Elliot that he was required to hear from the DMV before releasing the truck. Later, on 9 April 2020, Elliot received a letter from the North Carolina Department of Transportation stating that Mr. Bottoms had submitted an unclaimed vehicle report for the truck. In response, Elliot placed four calls to Mr. Bottoms, informed him of the letter she received, and asked again about obtaining the truck. This time, Mr. Bottoms explained that he could not release the truck until he heard back from the bank. Then, in a fourth attempt to retrieve the truck, on 17 April 2020, Elliot placed two calls to Mr. Bottoms who stated that he could not release the truck because the bank had instructed him not to.

On 24 April 2020, Mr. Bottoms completed DMV Form LT-262, titled Notice of Intent to Sell a Vehicle to Satisfy Storage and/or Mechanic's Lien. Circle of Seven subsequently received a letter dated 10 September 2020, which indicated that Bottoms Tire & Auto[1] had claimed a lien in the amount of $2,230. Because Bottoms Tire & Auto failed to secure delivery by certified mail, the Department of Transportation informed it that a judicial hearing was required for authorization to

---

[1] Mr. Bottoms has two businesses, Bottoms Towing & Recovery and Bottoms Tire & Auto.

sell the truck.

After Robinson finished his term of imprisonment on 13 October 2020 and learned that Bottoms Towing still had possession of his truck, he too made an attempt to regain possession of the vehicle. But Mr. Bottoms refused to release the truck unless Robinson provided "some paperwork from the bank." On 9 November 2020, Robinson visited Bottoms Towing and noticed that his truck had undergone a number of changes since he last saw it: his company's business decals and logos had been removed, the rims on the truck's tires had been replaced, there was damage to the truck's bumper and passenger side fender, the fifth tire and tools inside the truck had been removed, and transport tags had been placed on the vehicle. Mr. Bottoms admitted to making changes to the truck and reported he incurred the following charges to prepare the truck for sale:

| | |
|---|---|
| 2 Interstate batteries | 379.00 |
| Right front tire | 129.65 |
| Bottom fuel filter | 89.40 |
| Def fluid | 16.95 |
| 12 quarts oil | 59.40 |
| Oil filter | 12.50 |
| Chrome wheel covers | 395.00 |
| Shop supplies | 20.00 |
| Fuel | 50.00 |
| Install two batteries | 28.00 |
| Remove and replace fuel filters | 98.00 |
| Change oil and filter | 35.00 |
| Sales tax | 114.24 |

The total for these expenses was $1,427.14.

Additionally, Mr. Bottoms testified that he only drove the truck five or six

times, for a total of about 250 miles, "to make sure everything was running good." However, Robinson presented evidence—receipts from an oil change and tire replacement that detailed the truck's odometer reading—that the Dodge truck had almost 10,000 more miles on it than when he left it parked at the Wesleyan property. When Robinson visited Mr. Bottoms on 9 November 2020, he also noticed laundry and a coffee cup inside the Dodge truck.

Moreover, while Mr. Bottoms asserted that Robinson owed him $10,000 for the work he had completed on the vehicle, he never provided Robinson with an invoice. Similarly, Mr. Bottoms never communicated to Elliot the $150 towing fee or the $40 per day storage fee or provided her with an invoice.

On 17 November 2020, Bottoms Towing filed a petition in the trial court to sell the Dodge truck under a towing and storage lien. Circle of Seven objected to the sale and filed its response on 16 December 2020. The trial court entered its order and judgment in the matter on 26 February 2021, concluding that Bottoms Towing was "entitled to a possessory lien on the Truck," pursuant to subsection 44A-2(d), "in the amount of $13,557.50." Because the trial court found the expenses Bottoms Towing incurred in preparing the truck for the sale were "unnecessary," the court calculated the lien based only on (1) the towing charge and storage for 333 days, from 5 March 2020 to 1 February 2021; and (2) "the locksmith key creation charge." This amount was then reduced by $62.50 to account for the 250 miles Mr. Bottoms drove the truck while it was stored.

Circle of Seven raised three arguments at the Court of Appeals. First, it questioned the validity of Bottoms Towing's contract with Cliett because Cliett was not the legal possessor of the truck. *Bottoms Towing & Recovery, LLC v. Circle of Seven, LLC*, 283 N.C. App. 446, 452 (2022). Second, it challenged the possessory lien on the truck, claiming that N.C.G.S. § 44A-4(a) only allows a lien to be enforced if towing and storage charges are unpaid for "10 days following the maturity of the obligation to pay any such charges." *Id.* at 454 (quoting N.C.G.S. § 44A-4(a) (2021)). In support of this, Circle of Seven claimed that a reviewing court could not find that the lien had remained unpaid because Bottoms Towing had "never communicated or attempted to communicate" an obligation to pay until November 2020—after it had claimed a lien and amassed months of storage fees. *Id.*

Third, and most importantly for the purposes of this appeal, Circle of Seven contended that even if the lien was valid, its amount should only reflect the costs accumulated in the days prior to Elliot's first attempt to retrieve the truck and "*should be substantially reduced by Bottoms's personal use of the Truck.*" *Id.* at 455 (emphasis added). To support its argument that the lien should be reduced based on Mr. Bottoms's personal use of the truck, Circle of Seven provided the following facts: "[Mr.] Bottoms drove the Truck, kept personal items inside, made alterations, and . . . increased [the Truck's mileage] by approximately ten thousand miles during the storage period." *Id.*

While the dissent at the Court of Appeals ultimately agreed that the statutory

lien on the truck was valid, it disagreed with the trial court's calculation of that lien. *Id.* at 456 (Tyson, J., concurring in the result in part and dissenting in part). In doing so, the dissent explained that "diminished market value" has been applied "as a measure of damages for conversion and physical harm to property." *Id.* at 457. Thus, in the dissent's view, Mr. Bottoms's personal use of the Dodge truck resulted in a diminution of the truck's value, and the lien amount should be reduced based on that resulting monetary loss. *Id.* at 458.

## II.   Conversion

Conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Wall v. Colvard, Inc.*, 268 N.C. 43, 49 (1966) (quoting *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956)). This means that there are "two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012).

The majority's refusal to reach the merits of this case because "a conversion argument" was not raised below is unsupported by both the Court of Appeals opinion and the trial court's order. First, the Court of Appeals opinion explicitly states that Circle of Seven argued that the "lien should be limited by [Mr.] Bottoms's personal use of the Truck," which included that "[Mr.] Bottoms drove the Truck, kept personal items inside, made alternations, and that the Truck's mileage increased by

approximately ten thousand miles during the storage period." *Bottoms Towing*, 283 N.C. App. at 455. Similarly, the trial court's order compensated Circle of Seven for Mr. Bottoms's unlawful use of the Dodge truck.

Taking this information into consideration, it is clear that the Court of Appeals dissent did not "create an appeal for an appellant." Indeed, Circle of Seven did raise the issue discussed by the dissent: that the amount of Bottoms Towing's lien should be reduced based on Mr. Bottoms's personal use of the truck, which included driving the truck, leaving personal items inside the truck, and making alterations to the truck. *Id.* Because conversion occurs when one party exercises a right of ownership over another party's property and either alters that property or excludes the rightful owner of their rights in that property, *Wall*, 268 N.C. at 49, the crux of Circle of Seven's claim is the conversion of the Dodge truck by Mr. Bottoms. Accordingly, the unauthorized use of the Dodge truck and the resulting diminution in value based on that use provides a method for calculating damages, which would reduce the amount of Bottoms Towing's lien. *See Bottoms Towing*, 283 N.C. App. at 457–58 (Tyson, J., concurring in the result in part and dissenting in part) (citing *Phillips v. Chesson*, 231 N.C. 556, 571 (1950)).

In holding otherwise, the majority elevates form over substance, effectively determining that because Circle of Seven framed its argument using plain English, rather than legal terminology, the dissent was not permitted to address Circle of Seven's argument using its legal name: conversion. This is contrary to this Court's

constitutional mandate under Article I, Section 18 of the North Carolina Constitution, unfair to the parties, and an unfortunate waste of this Court's and the parties' time and resources.

### III.    This Court's Duty to Reach the Merits of a Claim

"All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. Litigants in this state must have free access to courts as a means to settle private claims and disputes. *Petrou v. Hale*, 43 N.C. App. 655, 658 (1979). This means that "the courts of North Carolina cannot fail to provide a forum to determine a valid cause of action." *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 174 (1989).

"Appellate courts perform two important functions: (a) correcting errors that occurred at the trial level, and (b) clarifying, standardizing, and developing the rules and principles of law that apply in the jurisdiction." Thomas L. Fowler, *Appellate Rule 16(b): The Scope of Review in an Appeal Based Solely Upon a Dissent in the Court of Appeals*, 24 N.C. Cent. L. Rev. 1, 1 (2001). While N.C.G.S. § 7A-30(2) has now been repealed, Current Operations Appropriations Act of 2023 § 16.21(d), its enactment furthered this Court's error-correcting function. For when a three-judge panel at the Court of Appeals disagrees on the correct outcome of a case, the likelihood that an error has been committed below increases. This notion is supported by our caselaw, which limits the scope of these appeals to only those issues that the three-judge panel

disagreed on. *See, e.g.*, *State v. Farmer*, 376 N.C. 407, 413 (2020). The majority's failure to reach the merits of this case leaves an open question: was error committed below?

While the majority states that it would be "unjust" to review this issue, it does not address the injustice that necessarily results from not addressing the issue. Although this Court could disagree with the Court of Appeals' dissent or either of the parties' arguments on the matter, failure to conclusively rule on the issue presented harms not only the parties in this case but also North Carolinians more generally. *See Mole' v. City of Durham*, 384 N.C. 78, 100 (2023) (Earls, J., dissenting). The parties in this action both filed briefs and participated in oral argument before this Court, no doubt expending a considerable amount of time, effort, and money to present their respective positions. As it pertains to Circle of Seven, this Court's failure to address the merits of this claim allows the Court of Appeals' conclusion to stand, without so much as an explanation or ruling on whether the majority opinion or dissenting opinion was correct in its application of the law.

Similarly, by declining to reach the merits of this claim, this Court has also failed to establish binding precedent on the legal issue raised by the dissent. A holding in favor of either party on the merits would give litigants in this state a greater understanding of the tort of conversion and the proper procedure for calculating damages based on a diminution of value that may later be used to offset a lien. *See id.*

Additionally, although the majority states that addressing the merits of this case would deprive Bottoms Towing of the opportunity "to disprove the fact-intensive assertions made by the dissent," this concern is illusory because the facts necessary to resolve this claim were introduced at the hearing in this case and Bottoms Towing had the opportunity to contest the evidence at that time. Because Circle of Seven argued below that the value of Bottoms Towing's lien should be reduced by Mr. Bottoms's personal use of the truck, there would be no "unfair do-over in the trial court," and our preservation rules do not act as a bar to a proper resolution of this case on the merits. *See M.E. v. T.J.*, 380 N.C. 539, 563 (2022).

## IV.    Conclusion

For appeals arising under N.C.G.S. § 7A-30(2), this Court should reach the merits of the dissent so long as it addresses the substance of a party's claims and sets out the dissenting judge's reasoning for breaking with the majority. *See Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 579 (2023). Judge Tyson's dissent clears that hurdle. Accordingly, I dissent from the majority's decision to affirm the Court of Appeals' holding without reaching the merits of this case.